UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROGER MARIANI, individually and on behalf of all others similarly situated, | § § § | |
| | § | Civil Action No. 4:16-cv-02042 |
| Plaintiff, | § | |
| | § | JURY DEMAND |
| v. | § | |
| | § | |
| MEMORIAL RESOURCE DEVELOPMENT CORP., TONY R. WEBER, JAY C. GRAHAM, SCOTT A. GIESELMAN, KENNETH A. HERSH, ROBERT A. INNAMORATI, CAROL L. O'NEILL, and PAT WOOD III, | § § § § § § § | |
| | § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT

Plaintiff Roger Mariani ("Plaintiff"), by and through his undersigned counsel, for his complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of the public shareholders of Memorial Resource Development Corp. ("Memorial" or the "Company") against Memorial and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin the vote on a proposed transaction, pursuant to which Memorial will be acquired by Range Resources Corporation ("Range") through Range's wholly-owned subsidiary Medina Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On May 16, 2016, Memorial and Range issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 15, 2016 (the "Merger Agreement"), to sell Memorial to Range.  Under the terms of the Merger Agreement, Range would acquire all outstanding shares of Memorial for 0.375 of a Range common share per Memorial common share (the "Merger Consideration").  The Merger Consideration is valued at $15.75 per share based on the May 13, 2016 Range closing price of $42.01.

3.     The Proposed Transaction is the result of an unfair process and provides the Company's stockholders with inadequate consideration.  As further described below, both the value to Memorial stockholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company.

4.     The inadequacy of the Merger Consideration is further evidenced by the fact that: (i) the $15.75 per share implied value of the Merger Consideration falls below Memorial's trading price of $15.97 on January 29, 2016, less than four months prior to the announcement of the Proposed Transaction; (ii) the implied value of the Merger Consideration is a significant discount to Memorial stock's 52-week trading high of $20.55 per share; and (iii) as recently as May 10, 2016, analysts at Mitsubishi UFJ Securities USA and Scotia Howard Weil Inc. set $23.00 target prices for Memorial, which is $7.25 above the $15.75 implied value of the Merger Consideration touted in the joint press release.

5.     Furthermore, the Board agreed to lock up the deal with a number of coercive deal protection devices in the Merger Agreement, including: (i) a "no-solicitation" clause that prevents the Company from soliciting, and subject to minimal exceptions, from providing non-public information to potential alternate bidders; (ii) an "information rights" provision that

requires the Company to promptly advise Range of any proposal or inquiries received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal; (iii) "matching rights" that allow Range three (3) business days to match any superior offer, plus an additional twenty-four (24) hours following a material amendment to the terms and conditions of a superior offer; (iv) a "no-waiver" provision restricting the Company and its subsidiaries from terminating, amending, modifying or waiving any material provision of any confidentiality or similar agreement to which Memorial or any of its subsidiaries is a party; and (v) a provision requiring Memorial to pay a termination fee of $75 million if the Company decides to pursue a competing offer.  Further, approximately 47.6% of Memorial's outstanding shares have been pledged in voting agreements supporting the Proposed Transaction.  The collective effect of these provisions is to chill any potential post-deal market check.

6.      Finally, compounding the unfairness of the Proposed Transaction, on June 13, 2016, Range filed a Registration Statement on Form S-4 (the "Registration Statement") with the U.S. Securities and Exchange Commission ("SEC").   The Registration Statement, which recommends that Memorial shareholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the valuation analyses prepared by the Company's financial advisors, Barclays Capital, Inc. ("Barclays") and Morgan Stanley & Co, LLC ("Morgan Stanley"), in connection with the rendering of their fairness opinions; (ii) Memorial and Range's  projections, utilized by Barclays and Morgan Stanley in their financial analyses underlying their fairness opinions; and (iii) material information concerning the sale process leading up to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of sections 14(a) and 20(a) of the U.S.

Securities and Exchange Act of 1934 (the "Exchange Act") as shareholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

7.     In short, the Proposed Transaction is designed to unlawfully divest Memorial's public shareholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company shareholders.  To remedy Defendants' Exchange Act violations, Plaintiff seeks to enjoin the shareholder vote on the Proposed Transaction unless and until such problems are remedied.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the claims asserted herein for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.

9.     This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Memorial is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

11.     Plaintiff Roger Mariani is, and has been at all times relevant hereto, a continuous shareholder of Memorial.

12.     Defendant Memorial is a Delaware corporation with its principal executive offices located at 500 Dallas Street, Suite 1800, Houston, Texas, 77002.   The Company is an independent natural gas and oil company focused on the exploitation, development, and acquisition of natural gas, natural gas liquids and oil properties with a majority of its activity in the Terryville Complex of North Louisiana.   Memorial owns its general partner, Memorial Production Partners GP LLC ("MEMP GP").   The Company's common stock is traded on the NASDAQ under the ticker symbol "MRD."

13.     Defendant Tony R. Weber ("Weber") has been Chairman of the Board and a director of the Company since its formation in 2011.   Defendant Weber is also a member of Memorial Resource Development, LLC's ("MRD LLC") board of managers, MEMP GP board of directors, and is Managing Partner and Chief Operating Officer ("COO") of Natural Gas Partners ("NGP").   NGP, through its subsidiary MRD Holdco LLC ("MRD Holdco"), owns approximately 50.8% of Memorial's outstanding shares.

14.     Defendant Jay C. Graham ("Graham") has been Chief Executive Officer ("CEO") and a director of the Company since January 2016.

15.     Defendant Scott Gieselman ("Gieselman") has been a director of the Company since its formation in 2011.   Defendant Gieselman is also a member of MRD LLC's board of managers, MEMP GP's board of directors, and is a Managing Director of NGP.

16.     Defendant Kenneth A. Hersh ("Hersh") has been a director of the Company since its formation in 2011.   Defendant Hersh is currently a member of MEMP GP's board of

directors, and was previously a member of MRD LLC's board of directors from April 2011 to June 2014.

17.    Defendant Robert A. Innamorati ("Innamorati") has been a director of the Company since June 2014.  Defendant Innamorati is also a member of MEMP GP's board of directors.

18.    Defendant Carol L. O'Neill ("O'Neill") has been a director of the Company since June 2014.

19.    Defendant Pat Wood, III ("Wood") has been a director of the Company since June 2014.

20.    Defendants Weber, Graham, Gieselman, Hersh, Innamorati, O'Neill and Wood are collectively referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Memorial common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.    The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 13, 2016, there were approximately 206,360,672 shares of Company common stock issued

and outstanding.   All members of the Class may be identified from records maintained by Memorial or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class, including, among others, whether the Registration Statement is materially false and misleading.

25.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and have no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

29.     Founded in 2011, Memorial had an initial public offering in June 2014.  Memorial is an independent natural gas and oil company engaged in the acquisition, exploitation, and development of natural gas, natural gas liquids ("NGLs"), and oil properties primarily in North Louisiana.  The Company also owns interests in producing oil and natural gas properties located in Texas, Colorado, Wyoming, and offshore Southern California.  As of December 31, 2015,

Memorial held leasehold interests in 171,570 net acres and had estimated proved reserves of approximately 1,378 billion cubic feet of natural gas equivalent.

30.     As of December 31, 2015, Memorial had 1,378 billions of cubic feet equivalent ("BCFE") of estimated proved reserves, substantially all of which are attributable to the Terryville Complex in North Louisiana.  The Company's proved reserves were 71% gas and 29% NGLs and oil.  Memorial uses hydraulic fracturing as a means to maximize the productivity of almost every well that it drills and completes.

31.     The Company's recent financial results underscore its promising prospects.  On November 4, 2015, the Company reported its financial results for the third quarter of 2015.  For the quarter, Memorial reported adjusted net income of $19.2 million, compared to adjusted net income of $10.1 million year over year.  Adjusted EBITDA was $104.3 million, compared to $76.2 million year over year.  During the third quarter, Memorial completed 22 gross horizontal wells and enjoyed an increase in net production of 102% year over year.  Commenting on the financial results, former Memorial CEO John Weinzierl ("Weinzierl") stated:

> Despite the current challenges facing the upstream oil and gas industry due to depressed commodity prices, MRD continues to thrive.  We had another outstanding quarter and brought online twenty-two gross horizontal wells in Terryville Field, increasing quarterly production 52 percent compared to the second quarter 2015. In addition, MRD added or secured the option to acquire 134,517 net acres year-to-date in and around Terryville Field, and we look forward to developing our newly acquired acreage beginning in 2016.

32.     On January 29, 2016, the Board issued a press release announcing that Weinzierl resigned as CEO and as a member of the Board in order to focus entirely on serving as the Chairman and CEO of Memorial Production Partners LP ("MEMP").  The Board also announced that Defendant Graham had been appointed to replace Weinzierl as CEO and was elected to take Weinzierl's seat on the Board.

33.     On February 24, 2016, the Company issued a press release announcing its financial results for the fourth quarter and full year 2015.  For the quarter, Memorial reported adjusted net income of $9.2 million, compared to $4.8 million year over year.  Adjusted EBITDA for the quarter was $96.9 million, compared to $93.9 million year over year.  Adjusted EBITDA for the full year 2015 was $63.6 million, and adjusted EBITDA was $370.9 million—an increase of $54.6 million year over year.  Commenting on these favorable results, Defendant Graham remarked:

> Despite the current challenges facing the upstream oil and gas industry due to depressed commodity prices, MRD finished the year strong as we brought online thirty-three gross horizontal wells in the Terryville Field, increasing annual production 72 percent over the last. We believe MRD's lower capital budget for 2016, combined with our expected cost reductions, will further protect our balance sheet and liquidity position while providing significant optionality to ramp-up production in the second half of the year should commodity prices warrant.

34.     On April 28, 2016, Memorial issued a press release announcing that it entered into an agreement to sell MEMP GP, the general partner of MEMP, for $0.75 million in cash to MEMP.  MEMP GP had previously held the general partner interest and 50% of the incentive distribution rights of MEMP.  Commenting on the sale of MEMP GP, Defendant Graham stated:

> I believe this is a very positive transaction for both MRD and MEMP.  The transaction better positions both companies as independent and separated entities in today's lower commodity price environment and furthers both companies' goals of increasing shareholder and unitholder value.

35.     Despite a challenging environment for the industry, the Company has begun to enjoy robust financial success.  On May 10, 2016, Memorial issued a press release announcing its financial results for the first quarter of 2016.  The Company reported adjusted net income of $21.5 million, a 22% increase from adjusted net income of $17.6 million year over year.  Memorial also reported adjusted EBITDA of $106.4 million, a 23% increase from adjusted

EBITDA of $86.8 million year over year.  Compared to the first quarter of 2015, Memorial enjoyed a 52% increase in net production.  Commenting on the impressive financial results, Defendant Graham stated:

> I'm extremely proud of the achievements our team has made as we've consistently delivered industry leading returns quarter-after-quarter even during this challenging environment.  We have continued to reduce MRD's drilling and completion costs, post double digit year-over-year growth rates and improve liquidity, all while remaining within cash flow.  This focus on optimizing cost structure, coupled with top tier well productivity, generates single well returns in excess of 100% at strip pricing," said Jay C. Graham, Chief Executive Officer of MRD.  "Additionally, the announced divestiture of the general partner of MEMP not only allows us to solely focus on our commanding position in North Louisiana but also reduce full-year general and administrative expense.

**The Flawed Sale Process**

36.     From inception, the Board performed a fundamentally flawed process to sell the Company.  While the Board had the opportunity on multiple occasions to canvass the market to determine whether higher value was attainable for the Company's assets and to its shareholders, the Board members authorized a substantially limited market check to only four potential counterparties after beginning discussions with Range and Company B (defined herein).

37.     According to the Registration Statement, on January 26, 2016, Range's Chairman, President and CEO Jeffrey L. Ventura ("Ventura") met with Defendant Hersh to discuss, among other things, potential business combinations.  Ventura and Hersh continued their conversation by phone on February 2, 2016, during which Hersh informed Ventura that Memorial could be interested in pursuing a business combination with Range.  Hersh subsequently introduced Ventura to Graham, and the two discussed a potential transaction on February 12, 2016.  Defendants Weber and Gieselman were kept apprised of the discussions, and beginning on April 15, 2016, Graham periodically updated the Board on the discussions.

38.      On February 16, 2016, Memorial and Range executed a bilateral confidentiality agreement.  During a meeting on March 16, 2016, Graham and a group of Range executives (including Ventura) agreed that Memorial and Range should move forward with the evaluation of a possible combination.

39.      On March 17, 2016, representatives of an oil and gas focused private equity firm referred to as "Company A" contacted Graham to discuss a potential acquisition of the controlling position in Memorial held by MRD Holdco.  Discussions with Company A ceased in early April 2016 because Company A wanted to acquire only the controlling position in Memorial and was unwilling to pay a premium.

40.      On March 29, 2016, David W. Hayes ("Hayes"), a Managing Director and Director of Corporate Finance for NGP, contacted an executive of a publicly-traded, independent upstream oil and gas company referred to as "Company B" to gauge Company B's interest in a potential transaction with the Company.  Company B was advised that Memorial was in talks with another party, and Hayes provided Graham's contact information to Company B.

41.      On April 4, 2016, Graham and Company B's CEO met for lunch to discuss a potential transaction between the companies.  On April 7, 2016, an in-person meeting of the Memorial and Company B management teams was held.

42.      On April 13, 2016, Ventura and Graham met in person.  At the meeting, Ventura proposed a stock-for-stock transaction, with Memorial stockholders receiving Range common stock at a 10% premium to Memorial's closing stock price on April 12, 2016.  In a letter outlining the proposal, an exchange ratio was not stated but based on the 10% premium the exchange ratio would have been 0.360 of a share of Range common stock for each Memorial share.

43.     On April 15, 2016, Graham contacted representatives of Barclays and Morgan Stanley to gauge their willingness to assist Memorial in evaluating the Range proposal.  During a special telephonic meeting of the Board that morning, the Board authorized Graham to engage Barclays and Morgan Stanley as Memorial's financial advisor.

44.     On April 19, 2016, representatives of Barclays and Morgan Stanley met with members of Memorial's management team and Gieselman to discuss other potential strategic partners.  After discussing approximately twenty potential counterparties, Memorial management instructed Barclays and Morgan Stanley to only contact four other publicly traded, independent upstream companies.  At a special telephonic meeting of the Board held the next morning, the Board indicated its support for only contacting the four identified counterparties.  That same day, Company B's CEO spoke with Graham and advised that Company B was no longer interested in pursuing a transaction with Memorial.

45.     Of the four identified counterparties contacted by Barclays and Morgan Stanley, one party declined immediately and the other three parties declined to make a proposal.

46.     On April 25, 2016, the Board held an in-person and telephonic meeting during which Barclays and Morgan Stanley made a joint presentation to the Board concerning Range's proposal.  The Board agreed to make a counterproposal to Range with an exchange ratio between 0.390 and 0.400.  Management determined to propose an exchange ratio of 0.395.  The proposal was delivered during a meeting the next day among Graham, Weber, Gieselman, Ventura and Manny.  Ventura advised Graham that Range was prepared to move up to an exchange ratio of 0.375, but no more—which represented a premium of only approximately 12%.

47.     On April 27, 2016, the Board held a telephonic meeting during which Graham presented Range's counterproposal.  Despite a counterproposal two days prior of an exchange

ratio between 0.390 and 0.400, the Board authorized Graham to advise Ventura that the Board was willing to move forward with an exchange ratio of 0.375.

48.     On May 6, 2016, the Board held an in-person and telephonic meeting, during which the Board authorized Barclays and Morgan Stanley to contact two additional counterparties.  Representatives of Barclays and Morgan Stanley noted that each of the two additional counterparties had indicated they were not interested in pursuing a transaction with Memorial, and that they did not believe either potential counterparty would have strong interest at that time.

49.     On May 10, 2016, Range submitted an updated proposal that included terms requiring—among other things—Memorial's acceptance of satisfactory deal protection provisions, no board seats for Memorial on the board of the combined company and a fixed exchange ratio of 0.375 unless the exchange ratio was greater than a 20% premium or lower than a 10% premium—which would result in a decrease or increase of the exchanged ratio.  Memorial management responded to the updated proposal on May 11, 2016, stating that it was not prepared to discuss any change to the exchange ratio, among other things.  This was reiterated during a telephone call between Graham and Ventura on May 13, 2016.  Range ultimately agreed to the 0.375 exchange ratio, but specified a termination fee amount of $75 million for Memorial.

50.     During the Board's May 13, 2016 meeting, Barclays and Morgan Stanley advised the Board that Company C expressed interest in pursuing a business combination but did not indicate the consideration it was willing to pay.  Company C also required several weeks of due diligence.  Following discussions, the Board determined to pursue the Proposed Transaction with Range.  The parties also subsequently negotiated a provision in the merger agreement pursuant to

which Range would be granted a termination right in the event of an alternative acquisition proposal for Range, in exchange for an increase in the termination fee to $300 million.

51.     On May 15, 2016, Barclays and Morgan Stanley delivered their separate opinions to the Board that the Proposed Transaction was fair to Memorial stockholders from a financial point of view.   The Board then approved the Merger Agreement, and Memorial and Range executed the Merger Agreement.   A joint press release announcing the Proposed Transaction was issued prior to the opening of the U.S. stock markets the next day.

**The Proposed Transaction Is Inadequate**

52.     On May 15, 2016, following the Board's approval, Memorial entered into the Merger Agreement with Range for inadequate consideration.   The next day, Memorial and Range issued a joint press release stating, in relevant part:

> Range Resources (NYSE: RRC) and Memorial Resource Development (NASDAQ: MRD) announced today a definitive merger agreement under which Range will acquire all of the outstanding shares of common stock of MRD in an all-stock transaction valued at $4.4 billion. This valuation includes the assumption of MRD's net debt, which was $1.1 billion as of March 31, 2016.
>
> * * *
>
> Under the definitive agreement, MRD shareholders will receive 0.375 shares of Range common stock for each share of MRD common stock held. Based on the Range closing price on May 13, 2016, the transaction has an implied value to MRD shareholders of $15.75 per share, representing a 17% premium to the closing price of MRD stock. Following the transaction, shareholders of MRD are expected to own approximately 31% of the outstanding shares of Range. MRD will have the right to nominate an independent director from MRD to a seat on Range's Board.
>
> The Boards of Directors of both companies have unanimously approved the terms of the agreement, and have recommended that both shareholder groups approve the transaction. Completion of the transaction is subject to the approval of the respective companies' shareholders, certain regulatory approvals and customary closing conditions. The transaction is expected to close in the second half of 2016.

53.     Upon completion of the Proposed Transaction, Range shareholders will own approximately 69% of the shares of the combined company and Memorial shareholders will own approximately 31%.

54.     In the joint press release, Ventura commented on the benefits Range will enjoy as a result of the Proposed Transaction:

> This is an exciting announcement that brings together two high-quality unconventional producers with large de-risked, high-return projects into one portfolio. ***This acquisition will give Range strategic positioning*** in both the Appalachian and Gulf Coast regions, providing ***greater marketing capabilities and opportunities***, with added ***beneficial exposure*** to growing natural gas demand. The transaction is also ***accretive to our cash flow, bolsters our credit profile and enhances the overall portfolio***. Like Range, the MRD team has a strong culture and track record of safe and efficient operations. We look forward to adding their talents and capabilities to our company, strengthening one of the top overall technical teams in the industry. We believe this combination will create significant value for our existing and new shareholders.

Emphasis added.

55.     In a presentation filed with the SEC on May 31, 2016, Range touted the rationale for acquiring Memorial, as seen in the following slide:

56.     Also in the May 31, 2016 presentation, Range touted the benefits it will enjoy as a result of the Proposed Transaction, as seen in the following slide:

## Benefits of Merger with MRD

- **Consolidating two of the highest quality natural gas producers in North America creates a premier natural gas company**
  - Strong position in the core of the Appalachian Basin in proximity to major Northeast population centers, feeding domestic consumer demand as well as international petrochemical demand
  - Sizeable position in the prolific North Louisiana Terryville Complex with close proximity to Gulf Coast industrial and petrochemical demand, LNG export facilities, Mexican pipeline exports and new power generation demand
- **Attractive valuation that is immediately cash flow accretive and credit enhancing**
  - Increased cash flow per share
  - Improved corporate margins
  - Reduced leverage
  - Strengthened balance sheet and enhanced liquidity
- **Potential to improve returns and enhance cash flow**
  - Marketing opportunities
  - Capital cost reductions
  - Improved drilling and targeting techniques
  - Overhead efficiencies
  - Reduced financing costs

**RANGE** RESOURCES®                                                                13

57.     The $15.75 per share implied value of the Merger Consideration falls below Memorial's trading price of $15.97 on January 29, 2016, less than four months prior to the announcement of the Proposed Transaction.  The $15.75 per share implied value of the Merger Consideration is also a significant discount to Memorial stock's 52-week trading high of $20.55 per share.

58.     Moreover, as recently as May 10, 2016, analysts Michael McAllister at Mitsubishi UFJ Securities USA and Brian Corales at Scotia Howard Weil Inc. set $23.00 target prices for Memorial, which is $7.25 above the $15.75 implied value of the Merger Consideration touted in

the joint press release.  Other price targets include: (i) a $21.00 price target as of May 10, 2016, by analyst Pearce W. Hammond of Piper Jaffray; (ii) a $20.00 price target as of May 11, 2016, by analyst Michael Schmitz of Landenburg Thalmann & Co.; (iii) a $19.00 price target as of May 12, 2016, by analyst Ben Wyatt of Stephens Inc.; (iv) a $19.00 price target as of May 10, 2016, by analyst Brian T. Velie of Capital One Securities, Inc.; and (v) a $23.00 price target as of March 17, 2016, by analyst Michael Rowe of Tudor Pickering & Co.

59.     In an October 16, 2015 *The Street* article entitled "Memorial Resource Stands Out in Depressed Oil and Gas Sector," author Claire Poole noted that while many energy companies "are cutting production and employees and shedding assets, explorer Memorial Resource is actually expanding."  The article noted that Tudor, Pickering, Holt & Co. Securities ("Tudor") thinks Memorial stock is undervalued, with 46% upside compared with its peer average of 29%-- with the Company's balance sheet strength and operational momentum making it Tudor's "top pick."  The article also quoted Defendant Weinzierl as stating "We're in pretty good shape.  We actively manage both sides of the balance sheet so we can take advantage of the situation."

60.     In a May 16, 2016 *Bloomberg* article analyzing the Proposed Transaction, author Naureen Malik notes that the Proposed Transaction – "one of the few U.S. energy mergers during the market rout," will give Range access to "an emerging gas export market and to properties in northern Louisiana, adding to its operations in Oklahoma, Pennsylvania and Texas."  In the article, Guggenheim Securities LLC analyst Subash Chandra explained that he has advocated for Appalachian producers to diversity their footprint and use stock as their currency, and that Range did that in the Proposed Transaction—which he described as "very smart on Range's part."  Also in the article, RBC Capital Markets analyst Kyle Rhodes noted that "Memorial's wells in the Upper Red zone in Northern Louisiana are so prolific they are on

par with output from Appalachia," and that the Proposed Transaction "was a little bit of a surprise" because the Company did not need cash and results from expansionary fields are not expected until later in 2016.

61.     In a May 17, 2016 *Seeking Alpha* article entitled "Range Resources' Deleveraging Merger," the author explains that Range will have a broader asset base with a deleveraged balance sheet and limited near term maturities that will put Range in a much better position to survive the oil and gas downturn.  The article elaborates:

> While Range Resources is certainly gaining attractive oil & gas assets through this merger, the balance sheet and liquidity implications are much more significant.  Range Resources has outlined meaningful benefits of the merger including improved credit metrics, cash flow figures and a larger hedge book at attractive prices.
>
> * * *
>
> This merger makes strategic sense for Range Resources as the firm will be in a much better liquidity situation which will help it avoid tapping the capital markets at unattractive rates.  Strong anticipated cash flows combined with limited near term debt maturities should allow Range Resources to emerge from the oil & gas downturn in a better position.

62.     In a May 31, 2016 *The Motley Fool* article entitled "Range Resources Just Made a Steal of a Deal," the author explains that Range acquires "[a] location advantage, decreased costs and some big wells" and that the Proposed Transaction "has made Range a better company" The author continued by stating:

> [I]t is very hard to understand why Memorial was willing to sell at this point in the natural gas cycle.  ***The company had no balance sheet issues, an incredible hedge book***, and, as we have seen, some ***excellent assets***.
>
> * * *
>
> It seems like a ***big win for Range shareholders***.  It brings together two high-quality unconventional producers with large de-risked, high-return projects into one portfolio.  Range was a pretty solid-looking company before.  It is an even better one now.

Emphasis added.

63.     Also on May 31, 2016, in a *Seeking Alpha* article entitled "About Range Resources' Acquisition of Memorial Resources Development," author Casey Hoerth ("Hoerth") explains that he believes "Range got a very good deal for Memorial Resource Development. Hoerth elaborates by stating that he considers Memorial "as among the most economical gas producers in the US, maybe even the single most economical."  Hoerth elaborated by stating:

> ***Memorial Resource Development is such a strong producer*** because it is the first mover in the Terryville Shale, Louisiana.  While the Terryville might be a small shale, it is also every bit as economical as the Marcellus in Pennsylvania is. Except the Terryville has a big advantage over the Marcellus, and that is existing midstream infrastructure and access to a huge nearby end market on the Gulf Coast.  That means ***Memorial can realize its production at Henry Hub prices***, while Marcellus producers, such as *Range, must settle for the much-discounted Leidy Hub.*
>
> * * *
>
> This acquisition was an all-stock transaction, and Range paid a premium of 17% to Memorial's going stock price, but in fact, ***I don't believe that Range is paying a premium at all***. Here is why.
>
> Back in mid-2014, Memorial was oscillating around $26 per share. By March of 2016 Memorial hit $10, and has since recovered to $15 per share. ***Memorial is still well below its high from a couple years ago.*** I think that's important and meaningful because Memorial is one of those producers that is going to be economical even when dry gas prices are low, and ***Memorial will be around for the days when dry gas prices are higher***, whenever that day may come. Range is willing to wait for that time, and I believe that Range was therefore wise to acquire Memorial. Ultimately, the Memorial acquisition will raise Range's margins, lower its leverage (it's an all-stock deal, remember) and will give the company much better acreage in a new geography.

Emphasis added.

## The Board Impermissibly Locked Up the Proposed Transaction

64.     The Merger Agreement contains deal protection devices which substantially increase the likelihood that the Proposed Transaction will be consummated, leaving Memorial's

public shareholders with no meaningful change of control premium for their shares. When viewed collectively, these provisions, which are detailed below, further the interests of Range, certain Individual Defendants and other Memorial insiders to the detriment of Memorial's public shareholders and cannot represent a justified, appropriate or proportionate response to any threat posed by a potential third party bidder.

65. The Individual Defendants have agreed to the following unreasonable deal protection devices:

- A "no-solicitation" clause that prevents Memorial from soliciting, or its directors and officers from even participating in discussions which may lead to a superior proposal from any bidder (Merger Agreement, Section 6.3(a));

- An "information rights" provision that requires the Company to promptly advise Range of any proposal or inquiries received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal (Merger Agreement, Section 6.3(d));

- A "matching rights" provision that allows Range three (3) business days to re-negotiate with the Board after it is provided with written notice of the Board's intention to make a change of recommendation, plus an additional twenty-four (24) hours following a material amendment to the terms and conditions of a superior offer (Merger Agreement, Section 6.9(e));

- A "no-waiver" provision restricting the Company and its subsidiaries from terminating, amending, modifying or waiving any material provision of any confidentiality or similar agreement to which Memorial or any of its subsidiaries is a party (Merger Agreement, Section 6.3(d)); and

- A termination fee of $75 million payable by the Company to Range if Memorial decides to pursue a competing bid (Merger Agreement, Section 8.3).

66.     The "no-solicitation" clause, the "information rights" provision, the "matching rights" provision, the "no-waiver" provision and the termination fee unfairly restrain the Individual Defendants' ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to a third party's written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

67.     The reason behind these deal protection devices is clear: the absence of a meaningful premium for shareholders creates the very real potential that a third party bidder will attempt to usurp Range and submit a higher bid for Memorial.  The possibility that a third-party bidder will emerge motivated Range to "lock-up" the Proposed Transaction by co-opting the Board and forcing them to adopt unreasonable deal protection devices that would ensure that Range could purchase the Company for less than would otherwise be possible.

68.     Moreover, in connection with the Proposed Transaction, Range has entered into a voting agreement with MRD Holdco, Defendant Graham, Anthony Bahr ("Bahr") and WHR Incentive LLC (a limited liability company controlled by Defendant Graham and Bahr).  According to the Registration Statement, the shareholders that executed the voting and support agreement collectively own approximately 46.7% of Memorial's outstanding shares, which under the terms of the voting agreements will be voted in favor of the Proposed Transaction.

69.     Taken as a whole, the foregoing deal protection devices and the voting agreements essentially foreclose the possibility that a third-party "white knight" could step

forward to provide Memorial shareholders with a premium for their shares, instead of the opportunistic and inadequate compensation offered by the Proposed Transaction.

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

70.     Compounding the unfair sale process and inadequacy of the Merger Consideration, Defendants also filed the materially incomplete and misleading Registration Statement with the SEC and disseminated it to Memorial's shareholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed decision whether to vote in favor of the Proposed Transaction.

71.     Specifically, as set forth below, the Registration Statement fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the valuation analyses prepared by Barclays and Morgan Stanley in connection with the rendering of their fairness opinions; (ii) Memorial and Range's projections, utilized by Barclays and Morgan Stanley in their financial analyses; and (iii) material information concerning the sale process leading up to the Proposed Transaction.  Accordingly, Memorial shareholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

**Disclosures Concerning the Prospective Financial and Operating Information of Memorial and Range Provided to the Board, Barclays, and Morgan Stanley**

72.     Defendants failed to disclose a fair summary of the financial projections of Memorial and Range relied upon by Barclays and Morgan Stanley for purposes of their analyses, for the following line items:

a.   General and administrative expenses;
b.   Value of hedges for each company;
c.   Value of minimum volume commitment deficiency payments for Memorial;
d.   Value of Range's divestiture of Oklahoma assets; and
e.   Value of acreage not included in the Range 3P Reserve Report for Range.

73.     Defendants further failed to disclose the Memorial 3P Reserve Report and the Range 3P Reserve report based on reserve, production, and capital and operating cost estimates as of April 16, 2016 provided by Memorial and Range, respectively.

**Disclosures Concerning Barclays' Financial Analyses**

74.     The Registration Statement fails to disclose certain key data and inputs underlying the financial analyses relied upon by Barclays, one of Memorial's financial advisors, in rendering its fairness opinion.

75.     With respect to Barclays' *Net Asset Valuation Analyses* of Memorial and Range, the Registration Statement fails to disclose the specific risking factors used by Barclays in determining the present value of the future after-tax cash flows expected to be generated from the Memorial 3P Reserve Report and the Range 3P Reserve Report, for both Memorial and Range, individually.  The Registration Statement further fails to disclose (i) the value impact of after-tax general and administrative costs for both Memorial and Range, calculated based on assumed normalized multiples for each company; (ii) the discounted value of hedges for each company; (iii) the value impact of minimum volume commitment deficiency payments for Memorial; (iv) the value impact of Range's divestiture of Oklahoma assets announced on April 28, 2016 for Range; (v) the value impact of acreage not included in the Range 3P Reserve Report for Range; and (vi) whether Barclays calculated implied per share valuation reference ranges for the Company or Range.  With respect to the oil and natural gas price scenarios Barclays employed to estimate the future after-tax cash flows for each of the reserve categories Barclays considered for Memorial and Range, the Registration Statement fails to disclose what price scenarios Cases III and IV reflect.

76.     With respect to Barclays' *Selected Comparable Company Analysis*, the Registration Statement fails to disclose: (i) the multiples for each of the selected comparable

companies observed by Barclays in its analysis; (ii) the benchmarking analyses or qualitative judgments that Barclays made related primarily to the differing sizes, growth prospects, profitability levels and degree of operational risk between Memorial and Range and the companies included in the selected company analysis; and (iii) whether Barclays calculated implied per share valuation reference ranges for the Company.

77.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) the multiples for each of the selected comparable transactions observed by Barclays in its analysis; and (ii) whether Barclays calculated implied per share valuation reference ranges for the Company.

**Disclosures Concerning Morgan Stanley's Financial Analyses**

78.     The Registration Statement also fails to disclose certain key data and inputs underlying the financial analyses relied upon by Morgan Stanley, one of Memorial's financial advisors, in rendering its fairness opinion.

79.     With respect to Morgan Stanley's *Net Asset Valuation Analysis*, the Registration Statement fails to disclose the range of discount rates used in the analysis.  The Registration Statement further fails to disclose the following inputs used to calculate the net asset value of Memorial: (i)  the present value of the pre-tax cash flows generated by Memorial management's estimates of Memorial's total proved and unproved reserves (discounted by industry standard discount rates); (ii) the book value of Memorial debt and certain other non-current liabilities; (iii) the cash and book value of other non-current assets; (iv) the sum of the present values (discounted by industry standard discount rates) of future general and administrative expenses, corporate taxes and minimum volume commitments; and (v) the present value (discounted by industry standard discount rates) of existing hedges.  Similarly, the Registration Statement fails to disclose the following inputs used to calculate the net asset value of Range: (i) the present

value of the pre-tax cash flows (discounted by industry standard discount rates) generated by Memorial management's estimates of Range's total proved and unproved reserves in the Marcellus Shale, Utica Shale and other regions, which were based on certain information provided by Range management to Memorial management; (ii) the book value of Range debt and certain other non-current liabilities; (iii) the liabilities resulting from a divestiture of certain assets in Oklahoma; (iv) the cash and book value of other non-current assets; (v) the sum of the present values (discounted by industry standard discount rates) of future general and administrative expenses and corporate taxes; and (vi) the present value (discounted by industry standard discount rates) of existing hedges.

80.    With respect to Morgan Stanley's *Comparable Company Analysis*, the Registration Statement fails to disclose: (i) whether Morgan Stanley performed any type of benchmarking analyses for Memorial and Range in relation to the selected comparable companies; and (ii) the individual multiples for each of the selected public companies observed by Morgan Stanley in its analysis.

81.    With respect to Morgan Stanley's *Precedent Transactions Analysis Based on Reserve Location*, the Registration Statement fails to disclose the multiples for each of the selected comparable transactions observed by Morgan Stanley in its analysis.

**Material Omissions Concerning the Flawed Sale Process**

82.    The Individual Defendants fail to disclose material information relating to, among other things, the sales process leading up to the Proposed Transaction, including:

(a)    what role, if any, NGP and/or MRD Holdco played in the Board's decision to sell the Company;

(b)     The views expressed by NGP with respect to its interest in exploring a strategic transaction with Company C;

(c)     the fees received by Barclays for the services it has provided to Memorial and Range in the last two years;

(d)     the financial advisory or financing services Morgan Stanley and its affiliates have provided to Range in the two years prior to the rendering of its fairness opinion, and the amount of fees received for these services;

(e)     The Board's rationale in reaching out to only two additional counterparties after each of the original potential alternative counterparties contacted had indicated that they were not interested in pursuing a combination with Memorial; and

(f)     The date Company C was first contacted.

83.     Defendants' failure to provide Memorial shareholders with the foregoing material information constitutes a violation of sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.   Absent disclosure of the foregoing material information prior to the shareholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

84.     Plaintiff repeats all previous allegations as if set forth in full.

85.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

86.     During the relevant period, Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of section14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

87.     By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by Defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's and Range's assets. Defendants were at least negligent in filing the Registration Statement with these materially false

and misleading statements.  Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

88.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to shareholders.

89.     By reason of the foregoing, Defendants have violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

90.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

91.     Plaintiff repeats all previous allegations as if set forth in full.

92.     The Individual Defendants acted as controlling persons of Memorial within the meaning of section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Memorial and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

93.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

94.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

95.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

96.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Memorial, and against Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED:  July 11, 2016.

Respectfully submitted,


_/s/ Thomas E. Bilek_
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010